have case number 24-1684 Spone v. Reiss. After you change seats, we'll hear from counsel for appellant. We'd like to know how much time you request for rebuttal. Hello, good morning, Your Honor. I would like to request three minutes for rebuttal. If it pleases the court, my name is Sean Rogers. I'm here on behalf of the appellant, Rafaella Spone. In this case, the district court committed a reversible error when it missed Ms. Spone's complaint, based on the idea that they conflated two separate items. On the one hand, there was conviction for standard harassment. On the other hand, there was charges that were null pros for cyber harassment of a minor. The charges are entirely different and distinct. They have different factual predicates. They have different elements that are required. The district court, in its opinion, basically used the conviction in the one case to entirely bar my client's claim, based on evidence that was solely reflected on the cyber harassment charges. Now, at that time, the Supreme Court's ruling in Chiaverini, hopefully I'm saying that correctly, had not issued. Can you address how Chiaverini would impact the district court's analysis? Well, I believe it's consistent with the argument that we made. And that's that, basically, where you have a situation that the criminal defendant is convicted of some crimes, but not every crime. That you have a framework that was issued by this court prior to that decision, and prior to probably some other decisions, called Kossler, where you basically look at the two statutes and see whether they're similar, and they have similar elements, and whether they have similar factual predicates. Whether they're designed to punish the same type of behavior. And, you know, you can basically have a favorable termination on the one hand, even if there is a conviction on the other hand. I think district courts in this, obviously there's not a precedential decision by this court on this, but district courts in this circuit have actually applied that Kossler to this scenario that I think that we're facing in this case that I believe is accretive to your question, Your Honor. And I think if the district court in this case applied that situation, that basically there was a few analytical missteps that the court took. They lumped the two together. They didn't, the district court did not distinguish between the harassment charges that were convicted and the cyber harassment charges of a minor that were not. And of a minor is important because for a year, or approximately a year, the prosecution really emphasized the idea that my client sent text messages to these minor children, created deep fakes, created false nude images of them, and posted them on social media. It turns out, on the eve of the trial, they no-crossed those charges because they didn't actually have that evidence. That's what our complaint alleges. So just to tease this out, in the context of a due process claim for kind of a stigma plus injury, right? A lot of times the end game is a name clearing hearing. The opportunity to say, that was false. I want to clear my name. Why isn't a no-cross effectively a name clearing hearing? Has this happened for a year? Like, if you got a name clearing hearing, what would you want more than what was effectively communicated by the no-cross? That's the end game. The end game is always a name clearing hearing. It wasn't me. They were wrong. They were this. You get a judgment that it wasn't you. Okay, that's good. That's what you get in a stigma plus case, typically. Some ability to clear your name. No-cross feels like your in the charge that was no-cross. Well, haven't you kind of, you know, hasn't the process kind of taken care of your claim? Well, I think if you look at the stigma plus side of the case, which, just to answer your Honor's question, the plus point that we were talking about is the deprivation that she suffered in terms of being arrested and charged with cybercrime. I mean, that's tough. Look, I read that. I think that's really tough because, and I'll give you feedback, but I'm telling you why I think that's really tough. Paul B. Davis, the case that this comes from, the case that invented stigma plus, stigma plus, the person was arrested and the person had almost like wanted posters or noticed this is a shoplifter posters posted all over the town. And so, and that was no stigma plus. That wasn't the plus needed. And so it strikes me that yes, much like that person, your client's experience some of the same conduct, but that's not good enough for the plus. So how do you beat Paul B. Davis where there was an arrest plus a campaign? You have an arrest plus a campaign. That's not good enough in Paul B. Davis. How is that good enough for your client, especially after you got a null process at the end of the day? Well, I think if you look at what the actual test is and that there's some deprivation that's linked to the stigmatizing, basically the defamatory statements. And I think in our case, it's a bit different because you basically have, and it kind of gets to your question originally, Your Honor, that you have on the one hand that she was convicted of something and you have the null process on it where she was essentially name clearing. But the problem was in this case, they were so, the prosecution in the media and in the public sphere and press conferences by the district attorney conflated these two. They really, well, let me go back. They basically primarily focused on the null process charges, the factual predicates that had to do with that side of the case. The conviction, I mean, the conviction had to do with actual communications between the two sets of parents. Nothing to do with the children, or nothing to do directly with the children, which is a requirement of the- But back it up. Yeah. Just talking about the actual elements of this. Arrest as an injury. As far as Reese, the only statements that I can see alleged in the complaint are the affidavit itself. So Davis, again, seems to put you out of the box. The Weinberg statements post-date the arrest. So I'm not seeing how that can be a harm caused by the Weinberg statements. And then perhaps you're saying then the prosecution, which proceeded because of a prelim, there's nothing in your complaint that suggests that those statements contributed to the prelim or were part of that. And in fact, the materials that you incorporate as a matter of your complaint state that he corrected his statement that she deep faked these videos. So, I mean, just as a factual matter, it doesn't seem like you've connected Wein- I think I said the wrong name before, but I meant to say Weintraub, that you connected his statements to a prosecution. I mean, if that's the plus, what is the connection? I'm not seeing that alleged in your complaint. Just so I understand the question. The question is how we've connected the plus statement or the statements made by the district attorney Weintraub in press statements and to the prosecution for cyber. Correct. Because you're saying the plus is the arrest and the prosecution, but this Weintraub statements post, well, first of all, as a factual matter, the record also reflects that she was issued a summons and that she voluntarily surrendered. So was there in fact an arrest here? I believe there was at least a criminal complaint. For which she was issued a summons. For which she was, yes. So it was effectively arrested. I'm not sure. But she answered the summons. Yes, I believe that's true. Okay. But as a matter, can we go back to Weintraub? As a factual matter, it seems like his statements post date the surrender or the arrest, whatever we want to call it. So that doesn't seem to be a plus as to Weintraub's statements. And there doesn't seem to be anything in your complaint that connects his statements to the prosecution as a plus. His statements concerning the actual, the allegations of the cyber. His announcement of whatever these charges are. Yeah, well, during the press conference, he delineated and went through exactly what the allegations were. I mean, he made the statements. Right. But the prosecution doesn't seem to be a result of those statements. That's what I'm saying. Your complaint does not allege that they were used in the prelim, that they in any way contributed to the prosecution as the plus here. Well, they were used in the affidavit of probable cause. They were used, I believe, the allegations were used almost up to trial. Weintraub's statements. Your allegation is that Weintraub's statements were defamatory. So the statements have to have the plus. Correct. The Weintraub's statements were in the affidavit of probable cause. Well, we have claims against Weintraub and I believe the other defendants based on. On Reese. Yes, Reese. I'm not sure how you say his name. Based on the allegations that they made in the affidavit of probable cause. Sure, but I'm asking about Weintraub. So the prosecution didn't end until it was null pros and it wasn't null pros until the day of trial. Right. So even though if we go back to, I mean, it's somewhat a part of the other side of the case, if you go back to Black, there is a due process right here throughout the criminal proceeding to not be basically not be injured through what we're arguing is fabricated evidence. I understand that's kind of getting into the fabricated evidence claim, but it is relevant to your question. I think in that, the link between his comments and the arrest and the charging and ultimately what I'm calling is the prosecution. It didn't end until the null process. So the entire length of the approximately a year, I think, would have been linked to his comments. I mean, the arrest was directly about the about the cyber harassment charges and or excuse me, the arrest for cyber harassment was about those deep fakes, those text messages to these minor girls. And the press conference was largely about the same thing. I think that if you look at the test for the Sigma Plus, that they have to be linked together. Those are, to me, those are directly relating to the same subject matter. So, you know, you're at time, but I have one question, maybe my colleagues do too, on fabricated evidence. I'm not really clear what evidence was fabricated. Like, so just walk me through that and I'll try to lay my hand out for you so you have something to punch at, okay? I'm not sure that the statements of the witnesses was fabricated. They gave those statements. They might have been lies. They might have been untruths. They might have been false in some way. That's not fabricated evidence. That's just you believe the wrong person. The images themselves weren't fabricated. There's no allegation that the officers, anyone on the prosecution team doctored those or anything like that. So it strikes me that what we've got, and I hope you punch back on this if you've got something, is that we've got legitimate pieces of evidence that come in. Your claim isn't that that was made up, that that was planted or that that wasn't otherwise evidence. It strikes me that this resonates more in Franks, which is when you've got evidence and you just kind of absolutely misassess it in a way and then it goes to the magistrate and you get the immunity that comes with the warrant. We don't want that immunity attached because you put things forward that just no one, everyone knows was wrong. That's, as I understand, off the cuff. Franks, but you're saying no, it's fabricated evidence. When I hear fabricated evidence, I want to see something that was truly manufactured by the team, not that came from external sources and was wrongfully believed or given too much weight. So can you tell me if I'm wrong in my understanding of fabricated evidence in Franks or even cleaner, what did the prosecution team fabricate? What did they make up? What piece of evidence just didn't exist outside until it got to them? Well, I think two elements that exist. There was argued there were text messages directly to minors with threats. Those didn't exist. There was those didn't exist. But the prosecution team made those up. So I'm saying this didn't exist because when you say fabricated, I'm thinking that it's like a planting of evidence. It's like a manufacturing of evidence that you couldn't get from from somewhere else. So but those text messages, those were between, you know, your client or someone else and minors that that wasn't made up by the prosecution team, was it? Well, so if you look at the case law that this circuit has put out, the intent element of fabricated evidence isn't simply actual intent, but it also includes reckless disregard in the sense that they used these elements of that I'm talking about now that didn't exist in an fall, in my view, within reckless disregard and reckless disregard. If you're in other words, if you if somebody if you have a somebody says to the police that there is a deep fake out there and it's on a device and they don't confiscate the device and do any work to investigate, investigate it all and put it in an affidavit of probable cause and simply arrest somebody based on that. That's arguably reckless disregard with which is an adequate intent for fabricated evidence. In other words, they essentially use that evidence to get the warrant. They didn't take any precautions to see whether it was. Once a warrant issues by an independent tribunal, that usually, you know, cuts off liability for the affidavits and the people associated with the warrant, doesn't it? Well, in this situation, we don't believe it does, because the things that were in the warrant simply met. I'm not saying everything, but there are certainly elements in the warrant that weren't true. And ultimately, they were. And that strikes me as Frank's. If you want to beat the immunity that comes with a warrant, you've got to fit Frank's not not some some kind of fabricated evidence sort of scenario. The warrant is is a specific. So the warrant is more. It's not exactly the warrant itself that we're arguing. It's about the use of the evidence that the warrant is referencing. And in that sense. So I understand if the officers made up the text messages themselves and put that in the warrant, that might be a Frank's problem and a fabricated evidence problem. But if they don't make up the text messages, they just wrongfully rely on them. I don't know if that's a fabricated evidence thing. I thought that was Frank's. It's on a continuum, I believe. And if you look at the intent, I'm not saying it couldn't be in Frank's also. But if you look at the intent element and fabricated evidence, certainly there is an actual intent. There is the what you're talking about, where the officers literally make something up. But there's also a reckless disregard and the reckless. And we believe the situation falls within the reckless disregard element. Yeah, just one question about the fabricated evidence claim. The district court said you didn't plead the elements of a fabricated evidence claim. I normally would allow you leave to amend, but I'm not going to because of the heck bar. And I understand, you know, you you challenged both both that there is a heck bar and that you didn't plead the elements. But if hypothetically we were to agree that there was no heck bar, but the complaint that was dismissed also did not state a fabricated evidence claim, are you looking for leave to amend? Or are you just maintaining that your complaint that was previously submitted does state the claim? So I'll say this just very quickly. We believe that the issue with the amendment below because of the heck bar, it made any amendment futile. So that's partly why no further amendment was made. I don't believe that the district court, we answered this in our brief, I believe that the complaint was sufficiently pled in that sense and that the district court was wrong in that element. That being said, if this court finds that the heck bar is not applicable and remands it, I think that my client would probably ask the district court for leave to amend to perhaps add additional elements. But I don't believe that it's, I believe it is adequate. I mean usually, you know, what in order to get leave to amend, it's nice if we don't send something back on a fool's errand. You know, there's a futility exception. And so just by way of, as they say at the movies, the preview of coming attractions, what would be the addition that you would contemplate if Judge Freeman is correct that we take away the heck bar? The heck bar was the reason for not allowing amendment. What do you put down as far as amendment? What do you change? I think it goes to what you were referencing and it would be developing the actual evidence that we're saying is fabricated. I think the allegations are in the complaint. If you look at paragraphs 97, 98, 99 of our complaint 101, it indicates, I'm sorry, that this evidence did not exist and that basically the police knew it didn't exist when they put that into, I think both, when they put that into the affidavit of probable cause and also following the preliminary hearing. And they continued, they didn't dismiss the charges of following that and they continued basically to prosecute for that. There is literally substantive allegations similar to what we put in our brief that would actually support those items that, in fact, the police did know that this didn't exist or should have known it didn't exist and they still relied on it. Good morning, your honors. My name is David McMain. May it please the court, I represent one of three of the appellee's defendants below. I'm going to take the first five minutes and address Heck. Attorney Brownlee, who represents Officer Reese, is going to take the second five minutes and address that there's no viable claim in the first instance. And then Counsel Vander Campbell, who represents the district attorney in the county, will address various other issues, including immunity. So I'm going to limit myself to Heck, which is the reason why we're here on appeal. The question really is, is can a underlying criminal defendant who was convicted of three of the six charges under the same section of the Crimes Code, different subsection admittedly, that has essentially the same elements that arise from the same course of conduct, has the same penalty and has the same grading, whether it is barred from bringing a claim under the favorable termination or the Heck rule? And I think the answer is absolutely not. There are no cases. While case law allows for the possibility, and the Judge Chung's question about Chivarelli, that allowed for the possibility in a false arrest case that if you have probable cause for one but not all, there could be a claim. It wouldn't be barred by Heck. It's really the same concept in our case. And there's really two cases that address the issue in somewhat similar factual scenarios. The Costler case, which came out of this circuit, one decision in 2019, we had an off-duty Pittsburgh police officer who was assaulted while working as a security guard and charged the gentleman with disorderly conduct, a summary offense, aggravated assault, a felony, and public intoxication, a fairly minor offense. At a bench trial, the court found that he was acquitted for the aggravated assault, as well as the public intoxication, and found him guilty of the disorderly conduct summary offense with a whopping penalty of $100 fine. And this court looked at the analysis and said, if it kind of comes from the same sequence of events, if it comes from the same type of crimes, if it's interwoven, and I think one of the things my friend on the other side said, and I think I got this right, this is all related to the same subject matter, namely harassing rival cheerleaders, either through parents or through them directly, then heck is the bar. The only difference with that case and more recent case that your Third Circuit also included, kind of a sense of, it has to be some sense of innocence. The Supreme Court in Thompson kind of took that part away, but I think the quote that's most important is said that the plaintiff in one of these cases has to show that the case ended without a conviction. And I think a is important because here we have three convictions. He was not acquitted, or she was not acquitted of everything. Can you address though, what element of Spohn's claim negates, what allegation or what part of her suit negates an element of the harassment conviction? Because it doesn't seem that she's challenging that there were communications or that the communications were aimed at these parents. What she seems to be challenging is the age, whether or not she said to kill someone, and whether or not, well I actually, it looks like from the factual record, the deep fake part dropped out at prelim, but it doesn't seem like a threat to kill someone or the age or either one of those would negate an element of the harassment claim. Yeah, I think the only difference between the two sets of charges, they both require, they're both under 2709 harassment, different subsections admittedly. They both require with intent to harass, annoy, or alarm. They both require a continuing, some type of continuing course of conduct, which is what is for the... Sure, but she's not challenging those. That's not the point. No, but I think under the HEC, the concept of the HEC doctrine is we're not going to, we're not going to allow someone to collaterally attack criminal matter for which they've been convicted. We're not going to essentially lay out two bites to the apple. There has to be some kind of finality because invariably, people are acquitted of some charges and convicted of others. And if we allowed them to bring a civil suit, I think you'd be inundated with even more false arrest, malicious prosecution, fabrication of evidence claims. So it's a... I guess that it seems to me that you're arguing that if someone is arrested at the same time for shoplifting and murder and goes to trial and it is somehow the shoplifting, the murder charge goes away. Let's say it's an all-prost or there's acquittal or something, but they get convicted of shoplifting. And later, they find out there was fabricated evidence supporting the murder charge. Because they were convicted of shoplifting, they can't challenge the murder? No, and I don't think that's the scenario we're talking here. I think the scenario, the hypothetic you gave was very similar to the Kosler case, where we had a very minor disorderly summary offense for which the person was acquitted and the serious charge of aggravated assault. I'm sorry, I have it backwards. The disorderly conduct, they were convicted, the serious charge of aggravated assault. So if it's not Judge Freeman's scenario, then it seems that you're basically saying as long as one element overlaps between the convicted charge and the acquitted or null prostrate, just give me one element overlapping, then the heck bar has to apply because when you're attacking the one conviction, you're by implication affecting elements of the other because there's a common element in both. So aren't you basically saying I'm arguing for a kind of a common element expansion almost of the heck doctrine so that it's not just the charge that we're challenging, but any other charges that have a common element with that one? You want a common element extension, right? No, because I think it's more than just one element, right? There has to be communication. So I'm wondering what the rule of law is. Is it two elements? Is it three elements? Is it all but one element? Like what's the rule? Because you say it's not what Judge Freeman says, and I think I'm smart. I think that's right. My intuition is that's just got to be right. And we all know that perfect overlap is the easy case too because that's clearly heck. So the question is, is just any degree of elemental overlap good enough? And I think you have to say in order to win on this point that some degree of elemental overlap is good enough, and the question is how much? Is it just one? Is it two? Are we supposed to do some sort of substantial weighing of the cases and say of the elements, gosh, these are really close? Are we supposed to look at the facts and say we're looking at the factual transaction and that's going to guide us for the heck bar? Like where are we on this? So I think your intuition is correct. I don't think there's any one set fact. I think you look at the commonality of the crimes. You look at the commonality of the elements. The other case that's very similar to this one, which also would be somewhat similar to Judge Freeman's hypothetical, not quite as extreme, was the Middle District case in Rentler where there were 21 charges filed. The person was acquitted of 10, acquitted of 11, convicted of 10, but the most serious charges they were acquitted for, I can envision because it's an issue that comes up a lot in cases that I handle. If someone steals a car and then a week later they use that stolen car to commit a robbery and then a week later they use the gun they got from the robbery in a murder and they're only convicted of one of the three, I think you could have, heck would not bar the other two from being brought because they're completely separable acts, separable crimes, and completely separable. And I think that would be an example, an extreme example, mind you, where heck would not. They don't have the same factual locus. Pardon me? So they don't have the same factual locus is what you're talking about. Factual locus, they're completely different crimes, right, on different occasions and What if here there were a harassment charge and that was, there was a fourth victim that was named and that actually was completely fabricated. They thought, oh, you know, let's get another victim that makes our case stronger, you know, let's pretend the forensic review had these communications. So it's just a totally fabricated harassment charge. Would heck bar that? I'm not sure heck would bar a completely fabricated separate crime against a separate victim who has an exam. They're the same course of conduct, same exact, so the elements totally overlap but it's just. I don't think so. I think we have to have another, interestingly, there's not a single case that gives an example of one where it wouldn't, heck wouldn't bar, right? The only two cases that are somewhat factually analogous, where we have kind of a split verdict, so to speak, are the Middle District case, Bentler and Kossler from this court in 2019. So I think it remains unanswered, but I think the the reason for hecking to begin with is to avoid piecemeal. So I'm still spitballing on like a rule of law because we're all over the place on this, but you know, one thing that comes to mind would be like something that has predicate acts, like RICO, right? So like RICO, you got it usually like mail fraud, you know, enterprises, all these things. And so maybe we could be in a scenario where you would sit there and say, hey, wait, you know, I got my RICO charge involved these three predicate acts. Maybe there could be a scenario where you would sit there and say, oh, hey, I got acquitted on the RICO charge, you know, maybe there's a heck bar for the predicate acts or maybe I got acquitted on a predicate act. But it strikes me that it's a lot easier when you're kind of beginning to nest things within one another as opposed to when you're spreading them out saying, ah, cyber harassment involves a different element, a different type of proof. And it's that that her action is going towards as opposed to just I don't know if it's called simple harassment, but what I'm thinking of is simple harassment. And so it strikes me that the best scenario, the strongest, cleanest scenario for extending heck is when things get nested, not when they get related, but maintain separate elements. Now, the problem with that clarity of legal rule is for your case, you're going to have a heck problem because this one does have a different element. What do you think? I'm spitballing. So, you know. And it's interesting. Where does the line draw? But I think the two cases that address it, they're different crimes. The Bentler case from the Middle District, where Judge Mannion kind of goes through some of the same analysis we're going through now. We had extremely serious charges that had different elements attempting to kill a police officer. And yet they were acquitted of those and convicted of far less serious and charges that had different elements that weren't even under the same section of the Crimes Code, which we have here. And he went through the analysis and relied largely on the Costler case and said there's got to be some clear separation. Otherwise, heck is meaningless. We could piecemeal any case where people are charged with multiple offenses. I do think there might be an extreme example where it's murder and shoplifting and they get acquitted of... But we have a test for determining whether crimes are different. And it's the Blackberger test. It asks whether there is a different... if there's complete overlap of elements. And so, here, there is not. We've established that. Right. There's not a complete overlap, but I don't think that's what is called for under either one of the heck cases that are discussing heck, the two that I just mentioned. I don't think there has to be a complete overlap. Otherwise, both of those would have resulted in the claims that the person was acquitted for to be able to proceed not barred by heck. Okay. Okay. I think the panel's silence means we're going to honor the red light. Okay. Thank you. Good morning, your honors. May it please the court, Joshua Brownlee on behalf of Defendant FLE, Officer Reese. A few comments on the heck exchange that the court just had with my colleague. Heck's favorable termination will rest on two justifications. One being habeas exclusivity, beginning with Preissler v. Rodriguez, all the way through McDonough v. Smith, 2019 case at the Supreme Court. The other is finality, comedy, and consistency between federal civil rights judgments and finality in criminal judgments. So, the nesting idea, Judge Phipps, that you had with respect to elemental approaches to application of heck's favorable termination requirement strikes right at the heart of what the Supreme Court's specific provisions of habeas maintain their congressional role in providing vehicles for incarcerated criminal defendants to collaterally attack outstanding convictions, while also recognizing that there are certain 1983 claims that may proceed without necessarily undermining a criminal conviction. So, I may give an example. So, when you have a substantive determination of criminal liability, it's a set of substantive elements satisfied on a factual predicate, right? In Nelson v. Joshua, this court held that 1983 judgments predicated on factual circumstances that are necessarily inconsistent with an underlying criminal judgment are heck barred, because a successful claim on the inconsistent facts would necessarily undermine the state judgment. So, in the context of this case, if we were to say that both elements of the harassment convictions have an element of communication, right, the general harassment charge and the cyber harassment charge, if the communication element is satisfied on a factual predicate that a specific message went to a specific person, that would be heck barred, because if Ms. Spohn were to succeed on her 1983 claims, she would necessarily be undermining the factual predicate for conviction. But her 1983 claims don't challenge the communication element. They're challenging something else. So, they're challenging an element that where there is no overlap between cyber harassment and standard harassment. So, the idea here is that the court directs in heck, and this court directed in Dennisburg City of Philadelphia, that district courts are to take the substantive elements of the 1983 claim and measure them against the elements composing the criminal judgment to see if there's any inconsistency. When you have, and this gets to a larger issue in this case, whether or not Ms. Spohn is actually alleging a due process violation, but as assuming that she has stated a plausible claim for evidence fabrication, every due process claim, be it a false evidence claim under Napoo, evidence suppression claim under Brady, has as an element materiality. In other words, the 1983 plaintiff must show that the fabricated evidence or the suppressed evidence had a meaningful impact on the outcome of the criminal case. If the evidence that the plaintiff is alleging, for instance, in this case, sticking with the communication element as an example, is that you fabricated evidence that I communicated to a minor. If her criminal conviction is predicated on facts that say she communicated to a minor, and she succeeds in a 1983 action saying, you fabricated evidence that I communicated to a minor, and but for that fabrication, the outcome of my trial would have been different. That claim would be heck barred because the judicial determination in the civil action is in conflict with the criminal judgment from the state courts. Well, look, part of the problem here is the affidavit is not in the record, nor is the prelim transcript, nor are, we have no idea what communications were charged. Correct. But let's assume hypothetically that the criminal complaint says, on January 1st, 2021, Ms. Phone texted, you should kill yourself, to minor A. If that was not a part of her, that January 1st communication was not part of her ultimate conviction, can she proceed on the allegation of fabricated evidence or false evidence? To make sure I understand the hypothetical, we have a situation where Ms. Phone communicated to a minor, and that factual predicate is supporting her outstanding criminal judgment. Well, what I'm asking is, let's assume that was one of the facts alleged to support a cyber harassment charge. Yes. On January 1st, she communicated to minor A, kill yourself, cyber harassment charge. She's convicted for harassment of minor A, and it is not in any way based on the January 1st  Is she HECBAR-ed? She would not be. She would not be, because the factual predicate supporting the 1983 claim is different than the factual predicate supporting criminal liability. So, but applying that to this case, doesn't that mean that the HECBAR, that maybe the district court erred on the HECBAR? We would concede that, Your Honor, at least on behalf of Officer Reese. Joint Appendix 595 to 598 analyzes the evidence that the trial court used to sustain the general harassment charges. Those communications, six communications, by the way, were to adults, not to minor children. So, and, but that draws us again back to whether or not there is any elemental overlap between the general harassment conviction and the elements for cyber harassment. If there is a general overlap in the elements and the factual predicate aligns, then that would be HECBAR-ed. But again, it's a fact-intensive inquiry that requires an analysis. But I mean, the fact-intensive inquiry really begins to evaporate when you've got a completely separate element depending on completely separate facts. Correct. And we probably have that here at least for one of the elements of the cyber charge, right? And if the evidentiary basis for the 1983 action does not relate to the evidentiary basis supporting any of the outstanding convictions, there's no HECBAR. So what about the leave to amend point? You know, if the HECBAR is the basis for denying leave to amend, I mean, should we just kind of, you know, politely send it back and say, look, we have this case law that says for 1983 plaintiffs, you get a presumptive leave to amend. Do you think that leave to amend is right? Or are we going to begin to start talking futility or some other exception? We fall right into futility. And that brings us back to the larger point here is that what Ms. Spohn has characterized as a due process claim is actually, in effect, a Fourth Amendment claim. And I've raised that in the brief. In Manuel versus City of Juliet, the Supreme Court said that if a claim sounds in an allegation that pretrial legal process was tainted by the use of fabricated evidence, the right allegedly infringed lies in the Fourth Amendment. So even if you're right, though, and first of all, I mean, I think the district court said she pleaded both. But even assuming that we disagree, that would be easily curable with an amendment. She would just plead a 14th Amendment claim instead of a 14th Amendment claim, and the district court would address that. But that doesn't circumvent the futility analysis here. And what that gets to is that under Manuel and under this court's decision in DeLay versus Kargan, pretrial allegations of unlawful arrest and pretrial detention must sound in the Fourth Amendment. So let's assume that Ms. Stone is, in fact, asserting a Fourth Amendment claim because as the complaint alleges at Joint Appendix 104, paragraphs 100 and 103, the cyber harassment charges were dropped prior to the initiation of trial. And the Superior Court of Joint Appendix 605 and 607 says that those charges were dropped just prior to trial, immediately before trial. So we are not yet in the 14th Amendment due process realm with respect to the cyber harassment charges. We're in the Fourth Amendment context. So then the question becomes, is probable cause apparent on the face of the complaint? That's the ultimate futility inquiry, Judge Freeman, I think what you're getting at. So if on the allegations and the complaint as it's currently pled, there's a reasonable factual basis to believe that Ms. Stone did, in fact, commit, had committed or would commit the crime of cyber harassment, then amendment would be futile because probable cause necessarily existed for her arrest for cyber harassment. But the challenge here, sorry, go, you go. Well, the challenge is we don't know exactly what she would put in that amendment. If the district court had granted her, you know, the district court outlined what it perceived as the deficiencies in the pleading. And, but, you know, and she's not required at this stage to tell us exactly what that amendment would entail. So why isn't it wiser to just say, district court, go back, grant her leave to amend. If she can do it, she'll do it. If not, she'll just, you know, she'll drop this count. And respectfully, Your Honor, that flips the futility analysis on its head because the question is, if we're to assess probable cause on the complaint as it's currently pled, then it's likely to be that a future amendment would be futile because as it's pled, there's a reasonable factual basis to warrant a prudent person to believe that she had committed the crime of cyber harassment. And this court held in Merkle, and the full title, excuse me, is, escape me, but it is cited in our brief, held that a, I'm blanking on the words, but basically a trustworthy information provided by a trustworthy source provides probable cause to believe that a person has committed a crime if there is not any other reason in the complaint for the officer to question the veracity of the statement. So that, but isn't that the amendment? Isn't that the amendment that they would make? The amendment that they would make would say, guess what? Everything they put in the affidavit, in the sporting evidence, that on its face might look like probable cause. The amendment I'd like to make is they had reason, the officers themselves had reason to deeply, deeply distrust that. So they can't clear that. It looks on its face like they can clear probable cause. My amendment is going to say, not so. That needs to be, we're going to do a reconstructed record. That stuff needs to be taken out. I'd now like to bring that amendment. That might not be futile, right? Sure. And if the court is to remand with instructions that Ms. Phone is to be given leave to file an amended complaint, she would be free to file that Fourth Amendment claim. And so the futility exception would be to attack not what's in the, presumably in the affidavits, but to say that the information in it should not have been given any way. Now, when we're analyzing futility, again, it's in the context of the count that Ms. Phone pled. She pled and she stands on a 14th Amendment due process claim for fabricated evidence. There is no realm of possibility on the facts as alleged. She can amend that to include, she can amend that to make that claim implausible. Because again, we are not in due process world. We are in Fourth Amendment reasonable probable cause world. So that claim should have been dismissed. So we're really pushing the bounds of 1983 amendments when we let you just swap out your constitutional violation. Correct. Because now we've got relation back issues with respect to when she's going to plead the claim. The futility analysis, right. The futility analysis is tied to the claim as pled. She's pled a 14th Amendment due process claim, which she's seeking to do now is to completely change the cause of action. That's not amendment. That's repleading. And I see my time is up, but the court has no further questions. Thank you. Thank you.  Good morning, Your Honors. May it please the court. My name is Jessica Vanderkam. I represent the county of Bucks and the prosecutor, Matthew Weintraub. And I think this is a good segue into the additional reason why I think amendment. If you found that the heck doctrine didn't bar the claim would be futile. From our perspective, from the prosecutor's perspective, he is entitled to absolute immunity because the allegations and the complaint all relate to the affidavit of probable cause and the statements that were supplied to law enforcement, which the prosecutor relied upon. So all everything relates to that affidavit of probable cause and the arrest warrants that came after that. And therefore, it falls squarely within the Imbler analysis that requires this court to focus on what's the conduct that's being complained of and is that prosecutorial in nature. This is not investigative conduct. It's not administrative conduct as it relates to count one in the fabricated evidence. It all relates to prosecutorial function. And therefore, the precedent is, there's plenty of precedent that has been cited by this court that enables and entitles the prosecutor to immunity on count one. And just, you've said it twice, so I just want to make clear, your immunity argument is limited to count one. It's not related to statements made by a prosecutor or press release or anything like that, right? I agree. Yeah. And that would be a qualified immunity analysis. It's not an abandonment of immunity, it's just you lose the completeness of absolute immunity. And I think it seemed to me in reviewing the papers on this that that may have gotten lost along the way. I saw in counsel's reply brief that he indicated that that had been addressed, but it had only been addressed as to count two. She never touched it as to count one, never discussed it. And so I do think that it's a fool's errand to pack this back or send it back. At least for your clients. At least for, because the prosecutorial immunity does not apply to the officers. Yes. If this court would not entertain my immunity argument, I would argue that still there is insufficient facts in count one, in the fabricated evidence count. And I would draw your attention to the Black case that specifically require, or states to satisfy the element of fabricated evidence. Testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong. And that's exactly the scenario that we have here. Law enforcement relied upon statements from victims. And later that testimony was not as strong as it first was when the arrest warrant was  At the pleading stage, however, are the lack of investigative action allegations at the pleading stage enough to demonstrate recklessness, for recklessness theory. So I heard counsel argue this isn't, I think I heard him admit it's not really a fabricated evidence claim. It's more of a reckless disregard, right, by law enforcement. And my comment to that is law enforcement in his pleading, excuse me, bears this out. They received the search warrant. They investigated. They seized her phone. They found the text messages and the photos and the videos on her phone. They brought that evidence to the preliminary hearing. And sufficient evidence was there to send up to the court of common pleas all six charges, three cyber harassment charges and three standard harassment charges. So I don't know how he can credibly argue that there was reckless disregard in light of that fact pattern that's pled in his complaint. And so I, again, to go back to my argument that there has been insufficient facts pled, I would also just point out that the plaintiff also has to allege that there's a reasonable likelihood that absent the so-called fabricated evidence that defendant would not have been criminally charged. But I don't think Ms. Spohn can do that in light of the arguments that he's putting forward. The victims testified at trial that Ms. Spohn was repeatedly sending them texts and photos and videos. She was convicted of doing that. That doesn't relate to any of the issues about what counsel is claiming occurred in a press release or a press statement. That's completely separate and apart. So I don't know how he can credibly allege in an amended complaint that his client would not have been criminally charged for these charges, including the cyber harassment. All right. I see you're at time. Do you have a question from Pat? Oh, I'm sorry. I misunderstood your comment. Thank you very much. I think you reserved three minutes. Is that right? I reserved three minutes. Thank you, Your Honor. I'd like to address the hack doctrine quickly. And your conversation about what would be the applicable overlap on the elements. I think if you look at the decision that this court had in Costler, it does actually articulate the analysis that I think is proper. And you look at the statutory elements, and you look to see basically whether the aim was the same or whether there was any factual predicates that were. There's a factual overlap is essentially the question. And in this case, if you look at the factual overlap between the cyber harassment charges and the regular harassment, in this case, particularly, they're not the same. The cyber harassment charges, they dealt with. First of all, the elements of that are that there has to be directed to specifically a minor through electronic communications in a text message or over social media or post on social media disparaging a minor. Those are very specific. They're not the same as regular harassment. I think that also counsel heard say that there was evidence that there was direct text messages between my client and the minor children. That is not true. So, you know, Judge Freeman asked a question, I think, at the end of one of your opposing counsel's time. And I'm curious to kind of hear what, and I heard their response, but I'm curious to hear your response. And she talked about the Blockberger Doctrine. It's kind of, I don't, I think it's a, I'm going to defer to Judge Freeman, but I think it's a double jeopardy doctrine, and it deals with kind of lesser included offenses, kind of this nesting principle I was talking about. Is that the rule that you're advocating for? And you're basically saying, look, neither one of these could be a lesser included of the other because the cybercrime involves an element of electronic communication that is not part of simple harassment. And so, you know, it doesn't nest within the other. And the simple harassment doesn't nest within it, I suppose. Is that, is that, is that the, is that the text you're looking for? Or are you looking for us to begin to parse out facts and look at what would be needed to prove this? And if the same proof of harassment happened in electronic communications, then maybe factually the evidence needed to prove simple harassment would be the same evidence that was needed to prove kind of the cyber harassment. And then maybe that, that's good enough. So, so is it facts or is it pure elements? What are you thinking? I think if you look at Costler, there actually appears to be kind of a combination. I mean, it specifies that favorable termination, it may be favorable termination if charge offenses contain distinct to statutory requirements and, quote, aim to punish two different sets of conduct. I mean, I think there certainly is a factual element, but I think there's also a look at the statutory elements of the crime. I think in this case, though, one thing that we shouldn't lose sight of here is that this is a motion to dismiss phase. And when you look at the element, the evidence that was specifically used in a criminal trial, there's a lot of nuance there as to what was actually testified to and presented. That can't be necessarily pled. And in this situation, our client has pled that this evidence was distinct. If ultimately that's proven not to be true, she would lose. But that is in this, at this phase. So what about the degree of the swap? Counsel on the other side says, hey, hey, hey, that may all be good if you're still talking the same cause of action. But you're swapping 14th for 4th here, he's saying. And he might be right. And so now you kind of say, hey, not only do I want to kind of augment the claim, I want to swap it for a completely, completely different claim. You know, that strikes me as, you know, really a big amendment. You know, it's not just the fact, but it's, I think you violated a different provision of the Constitution. One that are pretty clearly delimited based on temporal, you know, one exists at a certain point in time. After that point in time, the other one exists. You want a pretty big swap. So, you know, is that really the amendment that our rule allows? Is it kind of just any amendment? All I'm saying is, it strikes me as a big amendment. It is a big amendment, no question. Let me answer that in two parts. One, I wouldn't necessarily concede that there's no 14th Amendment due process claim here. I think if you look at Black, the due process claim in the 14th Amendment for fabricated evidence is broader than they're indicating. And that I think it would actually include any allegations. That isn't to say that there couldn't be a 4th Amendment claim. I know that wasn't pled. What is the 14th Amendment interest? If there's no trial, so Black was an acquittal. Halsey was a conviction. If there's no trial at all, what is the 14th Amendment interest? So if you look at Black, it does talk about the idea of not being prosecuted, not having. It says not to be tried by corrupt evidence or something to that effect. So since there's no trial here, what's the 14th Amendment? Just give me a tagline for the 14th Amendment interest is. Well, the 14th Amendment interest here would be. It's different than just a 4th Amendment claim where you would have, you know, or is solely used to obtain evidence or in an affidavit of probable cause. It goes beyond that because it lasted for a year. Yeah, I understand that what we're saying here is that it wasn't necessarily a trial, obviously, because it was determined not to be. It was determined to be false. It was determined not to be there. That didn't exist. I think the 14th Amendment interest is, I don't want to say it overlaps necessarily with the 4th Amendment, but I think that it is, it has to do with the process itself. And the process isn't solely combined, isn't solely confined just to a trial. It really ranges from, I think what Black says is it ranges from the time that, for example, I understand there was a trial in Black and that's a distinction here, but it does indicate that there's no difference between false evidence used to bring charges against somebody and a conviction. There is a line in Black that says that. I can see where you're extrapolating that. It sounds like you're sort of saying instead of corruption of trial process, it's corruption of criminal process. It just seems to me that I'm not sure, given that there is a sort of a temporal line where there is, you know, it seems like some overlap between 4th and 14th, but at some points they are separate. But that principle seems to me to swallow the 4th Amendment. You no longer have to have a detention. You no longer have to have a seizure. And DiBella, I think it sort of goes, is contrary to our holding in DiBella, which was a summons case and in which we found there was no 1983 cause of action because the person answered a summons and, you know, having to go to court was not a seizure. They didn't bring a 14th Amendment, but the principle seems to be there. I'm just trying to understand, would the corruption of criminal process have any limits where it would not reach into 4th Amendment territory? Well, if you look at your example in DiBella, where you have, it's about a summons case, this goes beyond that. And, you know, it goes where you have the arrest. For sure, I understand, like, she had bail, your client had bail, DiBella didn't. I'm just asking, as a matter of principle, if the 14th Amendment interest is corruption of criminal process, wouldn't that just take over all 4th Amendment claims? I think the closer you are at the temporal stage for a 4th Amendment claim, that would be the right claim. As you get closer to the trial and you have the 14th Amendment, that would probably be the right claim. But there is a gray area where there's kind of both, that maybe, or one would be more proper than the other. I think the answer is probably a continuum, Your Honor. And the fact that my client basically went from where she was charged and arrested or summoned or, you know, criminal information issued through, literally, the day of trial, where it was null-processed, that she does have a 14th Amendment interest here. I can't say that that would be true in every case. I think it is in our case because of the expansive breadth of the criminal process. All right. Thank you. Thank you very much for your time. Thank you, Your Honor. Thank all counsel for their time. Appreciate it.